UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALI BASIM MAHMOOD AL-CHARAKH and MOHAMMED BASIM MAHMOOD AL-CHARAKH,

Plaintiffs,

Case No. 2:25-cv-10138

HONORABLE STEPHEN J. MURPHY, III

v.

MARCO RUBIO,

Defendant.
________________________________/

**ORDER GRANTING MOTION TO DISMISS [16]**

Ali Basim Mahmood Al-Charakh and his brother, Mohammed Basin Mahmood Al-Charakh, sued the Secretary of State to compel adjudication of his visitor visa application under the Administrative Procedure Act. ECF No. 14. The Secretary moved to dismiss and argued that the State Department has no further obligation to act because it already refused the application. ECF No. 16. The Court agrees. It lacks jurisdiction to compel the requested agency action and must dismiss the case.

**BACKGROUND**

Plaintiff Ali Basim Mahmood Al-Charakh ("Ali") is an Iraqi national who worked as a software engineer supporting a USAID mission in Iraq. ECF No. 14, PageID.94. Plaintiff Mohammed Basim Mahmood Al-Charakh ("Mohammed"), Ali's brother, and their mother were granted permanent residency in the U.S. under the Refugee Admissions Program because of their support of the U.S. during Operation Iraqi Freedom. *Id.* at PageID.87.

In 2010, to gain permanent residence in the United States, Ali filed a Form I-360 petition with the United States Customs and Immigration Services (USCIS). His petition was granted later that year. But in 2011, the U.S. Embassy in Baghdad found Ali ineligible for a visa. According to Ali, that determination was based on a misidentification, so he "attempted to resolve the confusion" by submitting another application. USCIS denied that application and revoked its initial approval of the Form I-360 petition. *Id.* at PageID.94.

Unable to move to the United States, Ali resettled in New Zealand, where he is now a citizen. He resides there with his wife and daughter. *Id.* at PageID.95. In March 2021, Ali applied for a nonimmigrant visitor visa at the U.S. Consulate General in Auckland, New Zealand. *Id.* He wanted to attend his brother's wedding in the United States later that year. ECF No. 14-1, PageID.103. After an interview the following month, Ali's and his wife's applications were refused. *Id.*

With the refusal, Ali and his wife "were asked to submit DS-5535 forms to overcome the refusal." *Id.* Ali submitted the forms and asked the Consulate to "please reconsider [the] application." *Id.* After Ali asked for an update, the Consulate said his case was "still pending" and that his application required "additional administrative processing" before they could "adjudicate the visa." *Id.* at PageID.102–103. His brother's wedding came and went, and his visa application remained in administrative processing.

In August 2024, after three years of waiting, Ali submitted a Traveler Inquiry Form that included identity documentation to the Department of Homeland

Security's (DHS) Traveler Redress Inquiry Program (TRIP) in an effort to "remove the derogatory information" that he believed "prevented a decision on his nonimmigrant visa." *Id.* at PageID.87. In October 2024, DHS issued a final determination letter on the TRIP application notifying Ali that they "made any corrections to records that our inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding incidents of misidentification." ECF No. 12-1, PageID.83.

Ali shared the TRIP information with the Consulate in Auckland, but his visitor visa application status did not change. ECF No. 14, PageID.87. After he sent them the TRIP final determination letter, a state department official at the U.S. Consulate in Auckland responded,

> We understand that it is taking an exceptionally long time to receive a response from DHS. We are doing everything possible to process it in a timely manner. Unfortunately, your application requires additional administrative processing before we can adjudicate the visa. We have scanned the document to your case and the officer has been noted regarding the same. . . . Please be assured that we will notify you as soon as the additional processing has been completed.

ECF No. 14-1, PageID.101. After a few months of waiting, Ali sent a follow-up communication explaining that his brother was expecting the birth of his first child and that he wanted to be present with his family during that time. *Id.* That communication did not produce a successful result. The Consulate said his application was "still under administrative process before the Consular Officer [could] adjudicate the visa." *Id.* at 100. And so, after waiting fifty-one months, Ali and his brother Mohammed sued the U.S. Department of State under the Administrative

Procedure Act and sought an order to compel the Consulate to complete the processing of his visa. ECF No. 14, PageID.87–88.

The Government moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. The Government characterized Plaintiffs' complaint as requesting "a second adjudication of [Ali's] B1/B2 visa application" ECF No. 16, PageID.107, and contended that the Consulate's initial refusal of Ali's visa application "remains the final agency action" on the visa "unless and until superseded by another decision." *Id.* at PageID.120. Although the Consulate may "in some cases" provide refused applications "additional administrative process, which may generate evidence that may provide a basis for reconsideration of the refusal," the Government here argued that the initial refusal was final. *Id.*

## LEGAL STANDARD

To determine whether a complaint gives rise to federal subject matter jurisdiction, the Court assumes that all material facts alleged by the plaintiffs are true, construes the complaint liberally, and gives plaintiffs "the benefit of any doubt." *Farkas v. Blue Cross Blue Shield of Mich.*, 24 F.3d 853, 854–55 (6th Cir. 1994) (citation omitted).

The Administrative Procedure Act requires every agency to "proceed to conclude a matter presented to it" within "a reasonable time." 5 U.S.C. § 555(b). And courts may "compel agency action" that has been "unlawfully withheld or unreasonably delayed." *Id.* § 706(1). But courts only have jurisdiction to compel discrete actions that the agency was "required to take" by law or regulation—in other

words, courts may compel only nondiscretionary actions. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). If the action is discretionary, the Court cannot compel it.

"All nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer." 8 U.S.C. § 1202(d). Consular officers must process nonimmigrant visa applications "properly and promptly." 22 C.F.R. § 41.106. Specifically, consular officers have a duty to either "issue the visa [or] refuse the visa." *Id.* § 41.121(a); *see also Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87, 99 (D.D.C. 2024) (McFadden, J.) (finding the State Department "has a discrete, nondiscretionary [duty] to adjudicate visa applications"). And a refusal of a nonimmigrant visa "must be based on legal grounds." 22 C.F.R. § 41.121(a) (non-exhaustive list of bases for refusal). One such ground is section 221(g) of the INA, which requires refusal if (1) it appears the applicant is ineligible, (2) the application does not comply with regulations, or (3) the consular officer "knows or has reason to believe" such alien is ineligible under law. 8 U.S.C. § 1201(g).

**DISCUSSION**

The dispositive issue in the instant case is whether the State Department discharged its mandatory duty under the INA when it refused Ali's visitor visa application pursuant to INA § 221(g) and referred the visa for administrative processing. According to Plaintiffs, the referral to additional processing renders the initial refusal a non-final action. ECF No. 17, PageID.158–160. The Secretary, in turn, argued that "unless and until superseded," the refusal "remains the final agency

action on that visa." ECF No. 16, PageID.121. Courts have answered this question both ways. But this Court has already weighed in, and its answer to the question was and remains yes.

Plaintiffs argued that Ali's visa refusal was not a final decision on his application because the Consulate repeatedly described his application post-refusal as "pending." *See* ECF No. 14-1, PageID.102. Their position is compelling. After all, the Consulate assured Ali that it was "doing everything possible to process [the application] in a timely manner" but that it "require[d] additional administrative processing *before* [it could] adjudicate the visa" application. *Id.* at PageID.101 (emphasis added).

And a few courts have agreed with Plaintiffs' position—that refusal under INA § 221(g) and subsequent referral for administrative processing is *not* a final decision that satisfies the APA's conclusion requirement. *See, e.g.*, *Network Optix Inc. v. Rubio*, No. 2:24-cv-06505, 2025 U.S. Dist. LEXIS 27769, at *22 (C.D. Cal. Feb. 14, 2025) (finding a colorable claim under APA § 706(2) for refusal under INA § 221(g) because complete adjudication "must in the end be about determining eligibility for the requested visa—even if intermediate administrative acts and investigations must take place beforehand"); *Yafai v. United States Dep't of State*, No. 23-cv-13199, 2024 WL 2806948, at *3 (E.D. Mich. May 31, 2024) (Behm, J.) (finding that initial refusal and referral for further administrative processing was subject to judicial review but, nevertheless, dismissing for failure to state a claim of unreasonable delay).

Most courts, however, agree with the Government that § 221(g) refusal discharges the State Department's obligations. *See, e.g.*, *Sankari v. U.S. Dep't of State*, No. 2:24-cv-12975, 2025 WL 1550231, at *99–103 (E.D. Mich. May 30, 2025) (Drain, J.) (granting motion to dismiss for lack of jurisdiction because § 221(g) refusal and subsequent administrative processing satisfied duty to issue or refuse visa); *Kaveh v. Rubio*, No. 24-cv-0977, 2025 WL 814533, at *2–5 (D. Md. Mar. 13, 2025) (same); *Yared v. Nepal*, No. 1:24-cv-2114, 2025 WL 1067738, at *5 (N.D. Ohio Apr. 9, 2025) (same); *Sarshartehran v. Rubio*, No. 7:24-cv-633, 2025 WL 1261787, at *7 (W.D. Va. May 1, 2025) (same); *Yaghoubnezhad*, 734 F. Supp. at 101 ("In refusing Plaintiffs' applications under § 221(g) after their interviews with consular officers, [Defendant] complied with the regulations governing visa adjudications" and "thereby discharged its nondiscretionary duty.").

When first presented with the question, this Court held "[t]he fact that the agency may choose to undo its final refusal if presented with new information does not mean that it has not made the refusal in the first place." *Djafari v. Rubio*, Case No. 2:25-cv-10327, ECF No. 12, PageID.83 (E.D. Mich. July 24, 2025) (Murphy, J.). That remains true now.

For starters, Plaintiffs asked the Court to compel the State Department to "make a final decision" on the visa application within 45 days. ECF No. 14, PageID.98. But the Court may compel agency action "only in extraordinary situations" in which the agency refused to take a discrete, legally required action. *Sankari*, 2025 WL 1550231, at *8 (citation omitted). And language in communications

from the State Department "is irrelevant to the relief [Plaintiffs] seek" because they cannot supply the legally required action. *Yared*, 2025 WL 1067738, at *4. The Auckland Consulate's communications to Ali are thus inapposite. All that remains is that the consular officer refused the visa under INA § 221(g). And that is enough. The regulation expressly permits refusals to be based on INA § 221(g). 22 C.F.R. § 41.121(a).

In the argument section of their brief, Plaintiffs pointed to no statute or regulation that obliges the Consulate to do anything with applications that have already been refused on legal grounds. *See Yared*, 2025 WL 1067738, at *4; 22 C.F.R. § 121(a).[1] Although Plaintiffs—for good reason—believe that "their application[] remain[s] 'pending,' they allege no facts suggesting that [Defendant's] refusal was not a bona fide, lawful refusal" under 22 C.F.R. § 41.121(a), the regulation supplying the mandatory duty to decide. *Yaghoubnezhad,* 734 F. Supp. at 101.

Even so, Plaintiffs made compelling textual arguments other courts seem not to have yet considered. The consular officer *must*, according to the regulations, consider the documents applicants submit. 22 C.F.R. § 41.105(a)(1) ("All documents and other evidence presented by the alien . . . shall be considered."). Plaintiffs

[1] Plaintiffs did not argue that Ali is entitled to a timely *review* of the refusal. Under 22 C.F.R. § 41.121(c), "[n]onimmigrant refusals must be reviewed, in accordance with guidance by the Secretary of State, by consular supervisors, or a designated alternate, to ensure compliance with laws and procedures." But Plaintiffs did not cite § 41.121(c) in the argument section of their brief. *See* ECF No. 17, PageID.154–165. Nor did they advance any alternate argument about post-refusal process. To the contrary, their argument was premised on the lack of final refusal. Accordingly, the Court makes no determination about whether 22 C.F.R. § 41.121(c) entitles applicants to timely review of a refusal.

contended that "all" includes the documents presented during administrative processing and, thus, the officer cannot discharge his nondiscretionary duty to decide under 22 C.F.R. § 41.121(a) until *after* administrative processing. *See* ECF No. 17, PageID.157. Since Ali's application is still in processing, they argued that no decision of initial refusal could satisfy Defendant's duty to decide.

As a textual matter, the Court reads "all documents and other evidence presented by the alien" to most naturally include the documents they submitted within their application and during the interview. Even assuming, however, that the language extends to documents submitted after a refusal, that does not undermine the finality of the refusal. Aliens may be able to take post-refusal steps "to overcome the refusal." *See* 22 C.F.R. § 41.121(b)(1). And that might include submission of "additional evidence" to overcome ineligibility. *See id.* § 41.121(c). But any actions after the initial refusal do not impact the finality of the refusal. Accordingly, Plaintiffs' contrary rule would allow applicants to disrupt the finality of their visa applications simply by submitting additional information.

The D.C. Circuit's reasoning in *Karimova* also applies to Plaintiffs' argument. Even if a consular officer might have a nondiscretionary duty to consider materials submitted if he refers an application to additional processing, that does not change the fact that the application was officially refused. And "[b]ecause the visa application has already been officially refused, keeping the door open in administrative processing can only benefit, never hurt, the applicant's entry prospects." *Karimova*, 2024 WL 3517852, at *2. In other words, because the officer has discretion to conduct

additional processing on an application, even if he may be required to review additional materials, no statute or regulation requires him "to reach a more definite decision on an application that has already been refused." *Sarshartehran*, 2025 WL 1261787, at *7. The refusal and referral process may very well be suboptimal. But "it is not for the Court to fix problems in the statutory and regulatory scheme that impact visa applicants whose cases are placed into administrative processing. Such issues are for the legislature or rulemaking body to resolve." *Sankari*, 2025 WL 1550231, at *8.

When the consular officer reviewed and refused Al-Charakh's application in April 2021, ECF No. 14-1, PageID.103, the State Department discharged any obligations under the APA at issue here. Because Plaintiff did not point to any agency action that has been withheld or delayed, the Court lacks jurisdiction to grant the requested remedy. A contrary holding would force the Court to "defin[e] what it means to conclude a visa application in a manner that neither a federal statute nor regulation clearly requires." *Sankari*, 2025 WL 1550231, at *5 (quoting *Karimova* 2024 WL 3517852, at *4). The Court must grant Defendant's motion and dismiss the complaint.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's motion to dismiss

[16] is **GRANTED**.

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 12, 2026